IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GLENN FERNSTROM,
on behalf of Brietta Vasser,

                    Plaintiff,

  v.

FRANK BISIGNANO,[1]
Commissioner of the Social Security Administration,

                    Defendant.

OPINION and ORDER

24-cv-471-jdp

---

       Plaintiff Glenn Fernstrom brings this social security appeal on behalf of his wife, Brietta Vasser, who died in May 2023. Fernstrom seeks judicial review of a final decision of defendant Frank Bisignano, Commissioner of the Social Security Administration, finding that Vasser was not disabled within the meaning of the Social Security Act. Fernstrom asserts multiple objections to administrative law judge (ALJ) Michael Schaefer's decision, all grounded in a contention that the ALJ did not adequately explain his reasoning. The court agrees that the ALJ did not adequately explain why he rejected the opinions of Vasser's treating providers or how he considered Vasser's subjective symptoms, so this case will be remanded to the commissioner for further consideration.

---

[1] The court has updated the caption in accordance with Federal Rule of Civil Procedure 25(d).

BACKGROUND

Vasser applied for disability benefits in 2015, alleging disability beginning in March 2014. R. 283.[2] Vasser has been denied benefits at the administrative level three times, and this is her third appeal to this court. *See Vasser v. Saul*, No. 19-cv-781-slc (W.D. Wis. Jan. 20, 2021); *Vasser v. Kijakazi*, No. 21-cv-355-jdp (W.D. Wis. Sept. 8, 2022).

After the most recent remand, this case was reassigned to ALJ Michael Schaefer, who found in a March 2024 decision that Vasser suffered from multiple severe impairments: major depressive disorder, an anxiety disorder, post-traumatic stress disorder, fibromyalgia, asthma/chronic obstructive pulmonary disease, and obesity. R. 2003. Based on these impairments, the ALJ found that Vasser had the residual functional capacity (RFC) to perform light work, with additional physical and mental restrictions, including the following:

- She can occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl. She can never climb ladder, ropes, or scaffolds.

- She must avoid all exposure to extremes of cold, heat, wetness, humidity, or vibration. She must avoid all exposure to pulmonary irritants (including fumes, odors, dusts, or gases) or poorly ventilated areas.

- she can frequently reach in any direction with the bilateral upper extremities;

- she is limited to a low stress work environment, defined as: (1) understanding, remembering, or carrying out only simple instructions and routine, repetitive tasks; (2) a work environment with few, if any, changes in the work duties or expectations; (3) a work environment with no fast-paced production quota or rate (any production requirements should be more goal oriented, such as based on a daily, weekly, or monthly quota); and, (4) she is capable of occasional interactions with the public, co-workers, or supervisors.

R. 2005.

---

[2] Record cites are to the administrative transcript located at Dkt. 5.

The ALJ found that Vasser was unable to perform her past relevant work as an inspector/hand packager. But relying on the testimony of a vocational expert, the ALJ found that Vasser was not disabled because she could perform jobs that are available in significant numbers in the national economy, such as merchandise marker, router, and routing clerk. R. 2012.

Vasser again appeals to this court. On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

ANALYSIS

Fernstrom raises multiple challenges to the ALJ's decision, all of them grounded in contention that the ALJ failed to articulate the reasons for his conclusions. Fernstrom's primary objection relates to how the ALJ evaluated the opinions of Vasser's treating providers. He also objects to the ALJ's consideration of Vasser's reaching ability, subjective symptoms, treatment history, and obesity.

A.  **Treating providers**

Fernstrom contends that the ALJ failed to give sufficient weight to the opinions of Vasser's treating physician Carrie Torgerson and her treating psychologist Krista Demuth. Under the administrative regulations in effect at the time of Vasser's application, the ALJ had

3

to give a treating provider's opinion controlling weight if it was "well-supported and not inconsistent with other substantial evidence."[3] *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016); 20 C.F.R. § 404.1527(c)(2)–(6). If the ALJ did not give the opinion controlling weight, then the ALJ had to assign it a weight based on factors including the length and nature of the physician-patient relationship, the opinion's consistency with the record, and the provider's area of specialty. 20 C.F.R. § 404.1527(c)(2); *Kaminski v. Berryhill*, 894 F.3d 870, 875 (7th Cir. 2018). On review, court's role is to determine whether the ALJ considered these factors and minimally articulated his reasons for discounting the treating provider's opinion. *Olivas v. Saul*, 799 F. App'x 389, 391 (7th Cir. 2019) (*citing Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008)).

1. Torgerson

Torgerson, an internal medicine physician, first examined Vasser in October 2014 and then at least six more times over the next six years. R. 515 (record of first appointment). Torgerson provided two medical opinions in support of Vasser's application for disability benefits. First, in February 2016, Torgerson completed a fibromyalgia medical source statement in which she opined that Vasser had pain in every body part listed on the form, was limited to less than sedentary work, would need regular unscheduled breaks, and would be absent from work at least four days per month. R. 570–76. Fernstrom does not challenge the ALJ's rejection of this opinion, so the court need not consider it further.

---

[3] The treating provider rule applies only to claims like Vasser's that were filed before March 27, 2017, when the regulations changed prospectively. 20 C.F.R. § 404.1527; *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018)

4

Second, in January 2020, Torgerson completed a functional capacity form indicating that Vasser was limited to no more than occasional lifting and carrying of up to 20 pounds, no more than occasional reaching with her upper extremities, that she would need to change positions frequently while working, and that she would be absent from work at least three days each month. R. 1986–89. Fernstrom contends that the ALJ's explanation for discounting Torgerson's 2020 opinion fails to comply with 20 C.F.R. § 404.1527, for two reasons: first, because the ALJ failed to minimally articulate his reasoning, and second, because the ALJ failed to consider Torgerson's lengthy treating relationship with Vasser. The court agrees on the first point, so it need not consider the second.

In discounting Torgerson's 2020 opinion, the ALJ explained only that "many of the limitations are an overstatement of the claimant's limits, are not explained, and are not supported over the entire course of the period at issue." R. 2010. These reasons are conclusory because the ALJ doesn't say why Torgerson's medical notes do not support or explain her opinion. And the statement that Torgerson's opinion was an "overstatement of [Vasser's] limits" improperly assumes the ALJ's conclusion, because the ALJ's job in evaluating the medical opinions and other evidence was to determine those very limits.

In his response brief, the commissioner argues that the ALJ properly rejected Torgerson's 2020 opinion because it was inconsistent with Vasser's physical examinations, in which Vasser routinely demonstrated full strength and normal gait. R. 2009. The ALJ gave that reason only in the context of rejecting Torgerson's 2016 opinion, so it's not clear that it even applies to the 2020 opinion. In any event, it's not an adequate explanation, because it's not obvious that the physical exams are inconsistent with Torgerson's opinion and the ALJ didn't elaborate. This is essentially the same reason that the court rejected the last time it remanded

Vasser's case. *See Vasser v. Kijakazi*, 2022 WL 4103178, at *4. As the court explained then, the ability to walk or lift for a short period of time doesn't necessarily imply that a person can do those things for a longer period of time. So the ALJ needed to explain more fully why he believed Vasser's physical exams were inconsistent with Torgerson's opinion that Vasser couldn't walk for more than two hours or lift more than occasionally. *Id.*

The commissioner also argues that the ALJ properly rejected Torgerson's opinion because the opinion was based primarily on Vasser's subjective complaints. R. 2009. The ALJ also gave that reason only in the context of rejecting Torgerson's 2016 opinion. It's obvious why the ALJ believed that the 2016 opinion was based on Vasser's subjective complaints because Torgerson wrote on the form, "[patient] describes all over pain." R. 571. But it's not clear whether the ALJ also thought Torgerson's 2020 opinion was based on Vasser's subjective complaints. If he did, he provided no basis for that belief.

2. **Demuth**

Demuth, a licensed counselor, provided Vasser with regular therapy between October 2015 and March 2023. In January 2020, Demuth completed a mental health report opining that Vasser would experience marked difficulties in social functioning, would often experience difficulties in concentration, persistence, and pace, would repeatedly suffer episodes of deterioration or decompensation, would be absent from work about twice a month, and could work only about four to five hours a day. R. 1991–95.

The ALJ gave the following explanation for rejecting Demuth's opinion about Vasser's functional limitations:

> Ms. DeMuth's treatment notes often note the claimant being "sad," "depressed," or "anxious" (Ex. 6F/6, 9, 7F/3, 14F/97, 93, 21F/47, 44, 41, 38, 35, 31, 27, 22, 18, 15, 30F/72, 75, 88, 91, 93), but also find her thought process and though content to be

6

> without limit and attention, concentration, and memory, are routinely, if not always, noted as "intact," normal, or with no noted limits (Ex. 7F/7, 4, 14F/103, 102, 101, 99, 98, 41, 19F/20, 21F/55, 50, 8, 3, 30F/68, 78, 82, 85, 32F/8, 31F/45, 33F/31, 78). Although many of those notes are by telephone or video, they still reveal a capacity to communicate, focus, and engage in meaningful therapy even when her mood is poor or affected in some way. These are Ms. Demuth's notes of her observations and they do not appear to support the marked or very significant limits she assesses in her opinion.

R. 2010. This explanation presents a classic example of improper cherry-picking, in which the ALJ pointed to medical evidence that supported a finding of non-disability while ignoring contrary evidence. *Denton v. Astrue*, 596 F.3d 419 (7th Cir. 2010). The ALJ acknowledged that Demuth's treatment notes contained a variety of normal and abnormal findings about Vasser's mental functioning. But he relied only on the normal findings, declining even to cite instances in which Vasser's thought processes, attention, concentration, or memory were not normal, even though he admitted that those records exist. Further, many of the treatment notes the ALJ referred to simply describe Vasser as being in a positive mood when she reported to therapy. R. 554, 557, 747, 804, 805. The court of appeals has repeatedly observed that mental health symptoms often wax and wane, so the fact that Vasser's mood was sometimes positive in no way undermines Demuth's opinion that Vasser had significant deficits in mental functioning. *See Mandrell v. Kijakazi*, 25 F.4th 514, 519 (7th Cir. 2022).

## B. Reaching ability

Fernstrom also contends that the ALJ erred by concluding that Vasser could "frequently" reach with her upper extremities. Fernstrom argues that the ALJ should have adopted Torgerson's opinion that Vasser could only occasionally reach with her upper extremities. Other medical experts disagreed with Torgerson and opined that Vasser had no reaching limitations at all. R. 90, 120, 2061. But the court is remanding the case so that the

7

ALJ can reconsider Torgerson's opinion more generally, so the ALJ will have to reconsider Torgerson's opinion of Vasser's reaching ability as well.

## C. Subjective symptoms and treatment history

Fernstrom next asserts that the ALJ failed to articulate his reasons for discounting Vasser's subjective symptoms and treatment history. Fernstrom raises these as two separate arguments, but they are really a single issue, which is how the ALJ evaluated Vasser's credibility. Social Security regulations instruct ALJs to evaluate the credibility of a claimant's reported symptoms by considering a variety of factors, including her treatment history and daily activities. 20 C.F.R. § 404.1529(c)(2). Courts review an ALJ's credibility determination deferentially, overturning it only if it is patently wrong. *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021). But the ALJ must give "specific reasons for the credibility finding . . . The finding must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) (internal citations omitted).

Here, the court need not determine whether the ALJ considered the relevant factors in evaluating Vasser's credibility, because the ALJ failed to provide any reasons at all for rejecting Vasser's subjective report of her symptoms. He acknowledged in his decision that Vasser reported difficulties with activities of daily living, including getting dressed, bathing, cooking, and cleaning, and that she testified to difficulties concentrating, remembering things, and getting along with others. R. 2004, 2007. But he mentioned Vasser's symptoms only in the context of summarizing the medical evidence, and "a summary isn't a substitute for analysis." *Plemon v. Kijakazi*, No. 21-cv-148-jdp, 2022 WL 842914, at *3 (W.D. Wis. Mar. 22, 2022). The ALJ provided no specific reasons for discounting Vasser's subjective complaints,

8

nor did he explain how he considered those complaints in determining Vasser's functional limitations. The lack of reasoning in the ALJ's decision precludes meaningful appellate review, so remand is required on this issue as well.

**D. Obesity**

Finally, Fernstrom challenges the ALJ's handling of Vasser's obesity. Social Security Ruling (SSR) 12-2p requires ALJs to consider the limiting effects of a claimant's obesity in combination with her other impairments. See 2019 WL 2374244 (SSA May 20, 2019); *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012). The commissioner concedes that the ALJ did not meet this requirement. He acknowledged Vasser's obesity as a severe impairment, but his only other mention of it in his decision was a single sentence in his summary of the evidence: "The claimant has reported that she is 5'4" tall and weighs two hundred and fifteen pounds. [Consulting physician] Dr. Golub testified at the hearing that the claimant was morbidly obese." R. 2009.

Nevertheless, the court agrees with the commissioner that the ALJ's failure to consider Vasser's obesity was harmless because "the ALJ indirectly took obesity into account by adopting limitations suggested by physicians who were aware of or discussed [her] obesity." *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012); *see also Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Consulting physician Steven Golub testified at the administrative hearing about the functional effects of Vasser's obesity in combination with her other conditions. R. 2052–62. The functional limitations the ALJ adopted were essentially the same ones proposed by Golub. Fernstrom identifies no evidence that the ALJ overlooked, and he offers only speculation that Vasser's obesity limited her more than what the ALJ found in his RFC

9

assessment. *Rennaker v. Saul*, 820 F. App'x 474, 481 (7th Cir. 2020) (ALJ's failure to consider obesity harmless when plaintiff does not explain how obesity worsened her condition).

ORDER

IT IS ORDERED that that that the decision denying Brietta Vasser's application for disability insurance benefits is REVERSED and REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Entered January 20, 2026.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge